**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN,

               Plaintiff,

        - vs -

DISTRICT OF COLUMBIA COURT
OF APPEALS, *et al.*,

              Defendants.

Civil Action No.:
1:24-cv-02997-RBW

**BOARD ON PROFESSIONAL RESPONSIBILITY, ROBIN BELL, SARA
BLUMENTHAL, MARGARET CASSIDY, THOMAS GILBERTSEN, WILLIAM
HINDLE, BUFFY MIMS, SHARON RICE-HICKS, BERNADETTE SARGEANT,
LESLIE SPIEGEL, MICHAEL E. TIGAR, ROBERT WALKER,
AND CHRISTIAN WHITE'S SUPPLEMENTAL BRIEF**

Pursuant to this Court's April 29, 2026 Minute Order, the Board on Professional

Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William

Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael Tigar,

Robert Walker, and Christian White ("the Board defendants") hereby submit this supplemental

brief regarding their previously-filed motion to dismiss (ECF No. 7).

First, the Board defendants withdraw the *Younger* abstention argument made in their

opening and reply briefs in support of their motion to dismiss. *See* ECF No. 7-1 at 18-19; ECF

No. 10 at 9-11. Because the underlying disciplinary proceeding involving plaintiff has ended,

there is no longer any relevant "ongoing" state proceeding that could provide a predicate for

*Younger* abstention.

Second, on April 20, 2026, the United States Supreme Court heard argument in a case

involving the *Rooker-Feldman* doctrine. *See T.M. v. University of Maryland Medical System*

*Corp.*, No. 25-197. The Board defendants have cited the *Rooker-Feldman* doctrine in this case. *See* ECF No. 7-1 at 15-17; ECF No. 10 at 7-9. Although it is not clear if the Supreme Court's decision might affect this argument, as officers of the Court, we believe it is incumbent upon us to alert the Court to this case.

Third, the Board defendants assert one new argument in support of their motion to dismiss. As shown below, the issues and arguments advanced by plaintiff in this case are barred by collateral estoppel because they were already made to, and resolved by, the D.C. Court of Appeals on August 7, 2025, when it suspended plaintiff from the practice of law in the District of Columbia for 18 months. *See In re Klayman*, 340 A.3d 1212 (D.C. 2025), *rehearing en banc denied* (Sept. 12, 2025).

### Relevant background facts

As summarized in our previous submissions, *see* ECF No. 7-1 at 3-8, plaintiff was charged with multiple violations of the D.C. Rules of Professional Conduct, arising from his unsuccessful application to be admitted pro hac vice as counsel for Cliven Bundy in a federal case in Nevada. ECF No. 1 at ¶ 44. After receiving post-hearing briefs, the Hearing Committee made a preliminary determination, on January 16, 2020, that plaintiff had violated at least one of the rules charged. *See* Board Report and Recommendation at 36.[1] The parties appeared for the penalty phase of the hearing on September 14-15, 2020. *Id.*

In a Report and Recommendation issued on September 11, 2023, the Hearing Committee found by clear and convincing evidence that plaintiff violated multiple D.C. Rules of Professional Conduct, and that he "engaged in conduct unbecoming a member of the Bar." *See*

---

[1]      https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=LarryEKlayman18BD070.pdf

Hearing Committee Report and Recommendation at 2.[2]

Mr. Klayman filed objections with the Board, arguing, *inter alia*, the Board must declare the Hearing Committee's Report and Recommendation null and void because it was issued beyond the timeframe in Board Rule 12.2. *See* Board Report and Recommendation at 34-35. The Board rejected this argument, explaining that the D.C. Court of Appeals had repeatedly denied motions to dismiss on grounds of a delayed hearing report, unless the movant could show prejudice. *Id.* at 35 (citations omitted). The Board concluded that plaintiff had not shown any prejudice from the delay. *Id.* It ultimately recommended an 18-month suspension with a fitness requirement prior to reinstatement. *Id.* at 73.

The D.C. Court of Appeals then began considering that recommendation, and plaintiff's exceptions to it. *See In re Klayman*, No. 24-BG-689 (D.C.). While that discipline matter was pending at the D.C. Court of Appeals, plaintiff filed this lawsuit against the D.C. Court of Appeals and the Board defendants. ECF No. 1.

Plaintiff alleged that the discipline case must be dismissed because of the tardy Report & Recommendation. *Id.* at ¶ 50. Plaintiff alleged that, because of the passage of time between the hearing and the issuance of the Hearing Committee's Report & Recommendation, the hearing committee must have forgotten everything that occurred at the hearing and instead "made the decision to 'rubber stamp'" the arguments presented by the Office of Disciplinary Counsel (ODC). *Id.* at ¶ 51.

Plaintiff also alleged that the Board decided not to enforce Rule 12.2 because of his "conservative and Republican activist views," thus constituting "viewpoint discrimination." *Id.* at ¶¶ 29-39, 56, 68, 79. Plaintiff further alleged the Board's interpretation of Rule 12.2 violates

---

[2]    https://www.dcbar.org/ServeFile/GetDisciplinaryActionFile?fileName=HCLarryEKlayman18BD070.pdf

his First Amendment freedom of association and speech rights, *id.* at ¶¶ 65-82, as well as his rights under the Fifth Amendment. *Id.* at ¶¶ 83-90.

In briefing to this Court on the Board's motion to dismiss, plaintiff argued that because Rule 12.2 included the word "shall," the Rule was mandatory. ECF No. 9 at 23-24. He also argued that the Board's decision was contrary to "well-established case law" requiring an agency to comply with rules "promulgated and legislated by the higher authority." *Id.* at 24-25. And he argued a line of decisions from the D.C. Court of Appeals, denying motions to dismiss on grounds of a delayed hearing report unless the movant could show prejudice, were distinguishable. *Id.* at 26-28.

On May 29, 2025, the D.C. Court of Appeals held oral argument on whether plaintiff should be disciplined for his conduct and statements in the Bundy matter. *See* https://www.youtube.com/watch?v=orUj0SbbSQY (starting at 45:45). During his extended oral argument, plaintiff argued, *inter alia*, that: (1) Rule 12.2 was incorrectly applied by the Board; (2) Rule 12.2 required dismissal of the Bundy matter; (3) Rule 12.2 was mandatory because it included the word "shall"; (4) the Hearing Committee must have forgotten what transpired and must have simply adopted the ODC arguments; (5) the decisions from the D.C. Court of Appeals, denying motions to dismiss on grounds of a delayed hearing report unless the movant could show prejudice, were distinguishable; and (6) the Board's refusal to apply Rule 12.2 was because of his conservative views.

On August 7, 2025, the D.C. Court of Appeals suspended plaintiff from the practice of law in the District of Columbia for 18 months, with a fitness condition for reinstatement. *See In re Klayman*, 340 A.3d 1212 (D.C. 2025), *rehearing en banc denied* (Sept. 12, 2025). The Court of Appeals' lengthy opinion considered – and rejected – plaintiff's argument that dismissal was

required when a report is issued beyond the timeframe contemplated by Rule 12.2:

> To begin with, we have repeatedly held that Board Rule 12.2 (and D.C. Bar R. XI, § 9(a), which provides the same 120-day limit) is "directory, rather than mandatory." This is consistent with the general principle that "statutory time limits[,] . . . where the statute fails to provide for a sanction, are 'directory rather than mandatory.'"

*In re Klayman*, 340 A.3d at 1222 (citations omitted).

The D.C. Court of Appeals also addressed – and rejected – plaintiff's argument regarding the use of the word "shall" in Rule 12.2, explaining that "'when a statute says that an agency "shall" make a decision within a set period of time, that limit is generally considered "directory rather than mandatory."'" And where, as here, this court has repeatedly interpreted the specific rule at issue to create only a directory, not a mandatory, rule, we are bound by those decisions." *Id.* (citations omitted).

The D.C. Court of Appeals also addressed – and rejected – plaintiff's attempt to distinguish that court's many decisions denying motions to dismiss on grounds of a delayed hearing report unless the movant could show prejudice:

> Mr. Klayman acknowledges just one of our prior cases addressing the time limit for the hearing committee's report, *In re Morrell*. He argues that it is "completely distinguishable" because "the time limit for the [hearing committee] to issue its Report was governed by the D.C. Bar Rules and not the Board Rules as is the case here" and because the committee in that case exceeded its deadline by only a matter of months. Not only do we fail to see a relevant distinction between the Board rules and the Bar rules . . . but also this court has already explicitly held that the "directory, not mandatory" language applies to Board Rule 12.2, *In re Rachal*, 251 A.3d at 1041 (declining to treat Board Rule 12.2 differently than Bar R. XI § 9(a)). And while we recognize that a three-year delay is frustratingly long, Mr. Klayman has offered no reason why the length of the delay alone requires us to diverge from our prior case law. Indeed, at oral argument he agreed that, under his theory of the rule as a mandatory one, dismissal would be required if the hearing committee missed its deadline by just one day.

*Id.* at 1222-1223.

The D.C. Court of Appeals also addressed plaintiff's argument that he was prejudiced by the delay because "the hearing committee must have 'simply forgot or ignored everything that occurred at the hearing back in 2019' and resorted to 'simply cop[ying] and adopt[ing] wholesale [ODC's] briefs.'" *Id.* at 1223. It found this argument was "premised on a misrepresentation of the record":

> Mr. Klayman's chronology is wrong. Although the hearing committee was "unable," at the close of the first portion of the hearing in July 2019, "to reach a non-binding determination" that Mr. Klayman had violated an ethical rule, it then ordered post-hearing briefing and, in January 2020, with the benefit of that briefing, determined that ODC had proven at least one violation. It is therefore not the case that the committee only changed its mind about his culpability years later, when events were no longer "fresh" in its members' minds.

*Id.* at 1223.

The D.C. Court of Appeals also addressed – and rejected – plaintiff's "allusion to case law that holds that 'agencies such as the Board do not have the authority to ignore the rules which have been promulgated and imposed on them by a higher legislative authority, in this case, this Court,'" finding it "unpersuasive" because the Board "is not an administrative agency and this court is not a legislature; in any event, as explained above, the rule is directory rather than mandatory." *Id.* at 1223 n.15.

And the D.C. Court of Appeals also addressed – and rejected – plaintiff's argument that he was unconstitutionally targeted for his conservative views:

> Mr. Klayman argues that this disciplinary proceeding is "First Amendment viewpoint selective prosecution." He states that he, "like many other prominent Republican and conservative public interest activist attorneys, has been targeted by the weaponized District of Columbia attorney discipline apparatus." But he directs

> us to no record support for the assertion that he was "targeted"
> because of his political viewpoints, and we see no such support in
> the record developed before the hearing committee. Nor does he
> provide any developed argumentation in support of this claim. . . .
> Accordingly, we reject this argument as factually and legally
> unsupported.

*Id.* at 1223-1224 (citations omitted). On September 12, 2025, the D.C. Court of Appeals denied

plaintiff's petition for rehearing.

## ARGUMENT

I.      **Collateral estoppel bars plaintiff's arguments regarding whether: (1) the Board's interpretation of Rule 12.2 was correct; (2) the Board was required to dismiss the disciplinary proceeding because of the tardy Hearing Committee Report & Recommendation; and (3) the Board interpreted Rule 12.2 differently as to plaintiff because of his conservative views, thus constituting impermissible "viewpoint discrimination."**

The doctrine of collateral estoppel, also sometimes called issue preclusion, provides that

"once a court has decided an issue of fact or law necessary to its judgment, that decision may

preclude relitigation of the issue in a suit on a different cause of action involving a party to the

first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). It is meant to conserve

judicial resources by preventing a party from relitigating an issue that has already been decided.

*Id.*

Issue preclusion applies "'even if the issue recurs in the context of a different claim.'"

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742,

748-49 (2001)). "'It is well settled that the function of both [res judicata and collateral estoppel]

is to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster

reliance on judicial action by minimizing the possibilities of inconsistent decisions.'" *Landmark*

*Legal Found. v. Dep't of Labor*, 278 F. Supp. 3d 420, 426, 430 (D.D.C. 2017) (Walton, J.)

(citations omitted) ("because the court in *Landmark I* has already addressed the issue of whether

Landmark's FOIA request as drafted is a valid FOIA request, this Court finds that collateral estoppel precludes Landmark from pursuing that same request in this case").

"'In determining whether issue preclusion exists, the Court may take judicial notice of all relevant facts that are shown by the Court's own records, as well as public records from other proceedings.'" *Francis v. IRS*, Nos. 19-949, 19-3177, 2020 U.S. Dist. LEXIS 103558, at *24 (D.D.C. June 12, 2020) (Walton, J.) (cleaned up). "'A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Kissi v. EMC Mortg. Corp.*, 887 F. Supp. 2d 1, 6-7 (D.D.C. 2012) (Walton, J.) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

"This case involves defensive issue preclusion, which is 'when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party.'" *Colvin v. Howard Univ.*, 257 A.3d 474, 482 (D.C. 2021) (citing *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984)). "[T]his jurisdiction permits a defendant in an action to invoke collateral estoppel based on a prior determination rejecting a plaintiff's claim against other parties, even in the absence of privity." *Walker v. FedEx Off. & Print Servs.*, 123 A.3d 160, 165 (D.C. 2015).

## II.     Each of the four collateral estoppel elements are amply satisfied here

In the District of Columbia, "[c]ollateral estoppel, also known as issue preclusion, renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum."

*Stevenson v. HSBC Bank USA, N.A.*, 324 A.3d 295, 300-01 (D.C. 2024) (citations omitted). All four elements are satisfied here.

###### A.    The issues in this case were already litigated in the D.C. Court of Appeals

The issues in this case are whether: (1) the Board's interpretation of Rule 12.2 was correct; (2) the Board was required to dismiss the disciplinary proceeding because of the tardy Hearing Committee Report & Recommendation; and (3) the Board interpreted Rule 12.2 differently as to plaintiff because of his conservative views, thus constituting impermissible "viewpoint discrimination."

But each of these issues was litigated in the D.C. Court of Appeals during plaintiff's disciplinary proceeding. There, like here, plaintiff argued that the Board's interpretation of Rule 12.2 was wrong. There, like here, plaintiff argued that the Board was required to dismiss the disciplinary proceeding because of the tardy Hearing Committee Report & Recommendation. There, like here, plaintiff argued the Board's conduct towards him constitutes "viewpoint discrimination." The D.C. Court of Appeals forcefully rejected each argument.

"[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (citation omitted; emphasis in original). In this case, not only were the issues in this case raised and determined in the D.C. Court of Appeals' decision, but the particular arguments plaintiff makes here were raised and determined in the D.C. Court of Appeals' decision.

For example, plaintiff litigated in the D.C. Court of Appeals whether the Board was required to dismiss the disciplinary proceeding because Rule 12.2 uses the word "shall," with that Court rejecting this argument. *In re Klayman*, 340 A.3d at 1222. Plaintiff also litigated in the

D.C. Court of Appeals whether its many decisions denying motions to dismiss on grounds of a delayed hearing report unless the movant could show prejudice were distinguishable, with that Court rejecting plaintiff's attempts to distinguish these cases and instead holding that they controlled here. *Id.* Plaintiff also litigated in the D.C. Court of Appeals whether he was prejudiced by the delay, with that Court concluding that plaintiff's prejudice argument was "premised on a misrepresentation of the record." *Id.* at 1223.

Plaintiff also litigated in the D.C. Court of Appeals whether plaintiff's "allusion to case law that holds that 'agencies such as the Board do not have the authority to ignore the rules which have been promulgated and imposed on them by a higher legislative authority, in this case, this Court,'" applied here, with that court finding this argument "unpersuasive" because the Board "is not an administrative agency and this court is not a legislature; in any event, as explained above, the rule is directory rather than mandatory." *Id.* at 1223 n.15.

Because the record shows that the issues in this case were already litigated in the D.C. Court of Appeals, the first element for collateral estoppel is established.

## B.    The issues in this case were determined by a valid, final judgment on the merits

Second, it cannot be seriously contested that these issues were not "determined by a valid, final judgment on the merits." Following extended oral argument, the D.C. Court of Appeals issued a comprehensive decision that addressed plaintiff's myriad procedural and constitutional arguments. *In re Klayman*, 340 A.3d 1212 (D.C. 2025). That Court then denied plaintiff's petition for rehearing *en banc* on Sept. 12, 2025. Although plaintiff may assert that the D.C. Court of Appeals' decision is wrong, "'until vacated or reversed the judgment is regarded as conclusive.'" *K.H. v. R.H.*, 935 A.2d 328, 335 (D.C. 2007) (citation omitted). Since the deadline

for plaintiff to seek certiorari from the U.S. Supreme Court has expired, these issues were "determined by a valid, final judgment on the merits."

### C. Plaintiff had a full and fair opportunity to litigate these issues

Collateral estoppel applies where there was a full and fair opportunity for litigation by the parties or their privies. "Generally, a person who was not a party to a suit is not deemed to have had a 'full and fair opportunity to litigate' the issues decided in that suit." *Franco v. District of Columbia*, 3 A.3d 300, 304 (D.C. 2010) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Here, however, plaintiff was a party to the D.C. Court of Appeals' case. In addition to filing objections with the Board regarding the Hearing Committee's Report and Recommendation, he submitted a 50-page opening brief and a 20-page reply brief to the D.C. Court of Appeals, presented 42 minutes of opening argument, and presented an additional 14 minutes of rebuttal argument, all well in excess of the 20 minutes allocated to parties in the D.C. Court of Appeals.

### D. The D.C. Court of Appeals' resolution of these issues was essential to its judgment, and not merely dictum

Finally, for collateral estoppel to apply, the Court must confirm the issues previously decided were essential to the prior court's judgment, and not merely dictum. Once again, that element is easily satisfied here. Plaintiff's procedural and constitutional arguments in the D.C. Court of Appeals, which mirror his arguments here, were all intended for one essential purpose: to prevent the imposition of discipline.

Each argument – that dismissal was required when a report is issued beyond the timeframe contemplated by Rule 12.2, that the use of the word "shall" in Rule 12.2 "is 'a term which creates a duty, not an option,'" to distinguish the D.C. Court of Appeals' many decisions denying motions to dismiss on grounds of a delayed hearing report unless the movant could

show prejudice, that he was prejudiced by the delay because "the hearing committee must have 'simply forgot or ignored everything that occurred at the hearing back in 2019,'" that 'agencies such as the Board do not have the authority to ignore the rules which have been promulgated and imposed on them by a higher legislative authority, in this case, this Court,'" and that plaintiff was unconstitutionally targeted for his conservative views – was essential to the D.C. Court of Appeals' judgment, and not merely dictum, because, if the D.C. Court of Appeals accepted any of these arguments, it would have dismissed the disciplinary proceeding, as plaintiff repeatedly urged. Rejecting these myriad arguments, therefore, was essential to the D.C. Court of Appeals' imposing discipline upon plaintiff.

## CONCLUSION

For the foregoing reasons, the Board defendants respectfully request that the Court: (1) allow them to withdraw their previously-made *Younger* argument; (2) consider the impact, if any, of the United States Supreme Court's decision in *T.M. v. University of Maryland Medical System Corp* on the Board' defendants *Rooker-Feldman* arguments; and (3) find that the issues in this case are barred by collateral estoppel (in addition to the myriad other reasons previously shown by the Board defendants).

Dated: May 27, 2026

Respectfully submitted,

*/s/ Leslie Paul Machado*
Leslie Paul Machado (Bar No. 472395)
O'Hagan Meyer PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
(703) 775-8607 (phone)
(804) 237-0250 (facsimile)
lmachado@ohaganmeyer.com

**Counsel for Defendants Board on Professional Responsibly, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas**

-13-

***Gilbertsen, William Hindle, Buffy Mims,
Sharon Rice-Hicks, Bernadette Sargeant,
Leslie Spiegel, Michael Tigar, Robert
Walker, and Christian White***

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 27th day of May 2026, I filed the foregoing with the Court using the CM/ECF system, which will electronically serve all counsel of record who have entered an appearance in this case, and that I separately sent it to the following via electronic mail:

Larry Klayman
Klayman Law Group P.A.
7050 W. Palmetto Park Road
Boca Raton, Florida 33433
leklayman@gmail.com

/s/ Leslie Paul Machado
Leslie Paul Machado

-14-