UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA COURT OF APPEALS, et al.,<br><br>Defendants. | Civil Action No. 24-2997 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Larry Klayman, an attorney proceeding pro se, brings this civil action against (1) the District of Columbia Court of Appeals ("D.C. Court of Appeals"); (2) the District of Columbia Board on Professional Responsibility (the "Board"), which is the disciplinary arm of the D.C. Court of Appeals responsible for adjudicating disciplinary proceedings against attorneys licensed to practice law in this jurisdiction, and nine of the Board's members: Bernadette Sargeant, Robert Walker, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Sharon Rice-Hicks, Michael Tigar, and Leslie Spiegel (collectively the "Board Defendants"); and (3) three members of the Ad Hoc Hearing Committee ("AHHC"), who were appointed by the Board to preside over disciplinary hearings: Buffy Mims, Robin Bell, and Christian White (collectively the "AHHC Defendants"). The plaintiff, a self-described "prominent conservative and Republican activist and attorney[,]" alleges that the Board violated his constitutional rights by interpreting a rule of professional responsibility ("Rule 12.2") differently when adjudicating disciplinary proceedings against him than it does when

adjudicating disciplinary proceedings against attorneys with different political views. Complaint ("Compl.") ¶¶ 19–20, ECF No. 1.

Currently pending before the Court is the Board's, the Board Defendants', and the AHHC Defendants' Motion to Dismiss Plaintiff's Complaint ("Defs.' Mot."). See Defs.' Mot. at 1, ECF No. 7. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion to dismiss.

## I. BACKGROUND

The Court previously set forth on several occasions the lengthy factual background surrounding the plaintiff's history of litigation against the District of Columbia Court of Appeals and the Office of Disciplinary Counsel ("ODC"), see Klayman v. Porter, Nos. 20-cv-3109, 20-cv-3579, 21-cv-965, 2022 WL 3715775, at *1–4 (D.D.C. Aug 29, 2022) (Walton, J.); Klayman v. Porter, No. 22-cv-953, 2023 WL 2496738, at *1–2 (D.D.C. Mar. 14, 2023) (Walton, J.), and therefore will not reiterate it again here. However, as it has done before in the plaintiff's cases, the Court will set forth the factual allegations and procedural background specific to this case and then the resolution of the pending motions.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Law by Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, Robert Walker, and Christian White in Support of Their Motion to Dismiss Plaintiff's Complaint ("Defs.' Mem."), ECF No. 7-1; (2) the Plaintiff's Response in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 9; (3) the Reply Memorandum of Law by Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, Robert Walker, and Christian White in Support of Their Motion to Dismiss Plaintiff's Complaint ("Defs.' Reply"), ECF No. 10; (4) the Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, Robert Walker, and Christian White's Supplemental Brief ("Defs.' Supp."), ECF No. 34; and (5) the Plaintiff's Response in Opposition to Defendants' Supplemental Brief ("Pl.'s Supp."), ECF No. 35.

## A. Factual Background[2]

### 1. The Bundy Matter

This case arises out of what the plaintiff calls the "Bundy Matter," a 2019 attorney disciplinary proceeding involving the plaintiff's attempt to be admitted pro hac vice in the United States District Court for the District of Nevada to represent Cliven Bundy. See Compl. ¶¶ 19, 23, 26; In re Klayman, 340 A.3d 1212 (D.C. 2025). In the Bundy Matter, the ODC charged the plaintiff with violating several Rules of Professional Conduct because he inadequately disclosed his disciplinary history in his application for pro hac vice admission in the District of Nevada. In re Klayman, 340 A.3d at 1216. The plaintiff "was summoned before the AHHC comprised of Defendants Mims, Bell, and White in July of 2019 and September of 2019" for a hearing in the Bundy Matter. Compl. ¶ 44. Thereafter, on September 20, 2023, the AHHC "issued an AHHC Report and [ ] recommended [that the plaintiff be sanctioned with] a one-year suspension [from the practice of law] with a reinstatement provision." Id. ¶ 49. In July of 2024, the Board issued its final report, which "largely adopt[ed] the factual findings of the [AHHC]," and "recommended that [the plaintiff] be suspended for eighteen months with a [character] fitness requirement" before reinstatement. In re Klayman, 340 A.3d at 1221. The D.C. Court of Appeals adopted the Board's recommendation of an eighteen-month suspension with a fitness requirement in an opinion issued on August 7, 2025. Id. at 1236. The plaintiff filed a petition

[2] In resolving a motion to dismiss, the Court may consider documents incorporated in the Complaint by reference, which can occur "where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004)) . The Court may also take judicial notice of public documents and records from other court proceedings. See Lipton v. MCI Worldcom, Inc., 135 F. Supp. 2d 182, 186 (D.D.C. 2001); Kungle v. State Farm, Fire & Cas. Co., 48 F. Supp. 3d 67, 74 (D.D.C. 2014). Accordingly, the Court will take judicial notice of the plaintiff's complaint in Klayman v. Bd. on Pro. Resp., 2024-CAB-000048 (D.C. Sup. Ct. 2024) ("Superior Court Compl.") and that court's April 9, 2024 Order dismissing the plaintiff's complaint for lack of subject matter jurisdiction ("Superior Court Order"), both which are attached to the defendants' filings.

with the D.C. Court of Appeals for rehearing en banc, Pl.'s Opp'n. at 2–3, which the D.C. Court of Appeals denied, see Board on Professional Responsibility Defendants' Notice of Issuance of Mandate, Request to Reinstate Motion to Dismiss, and Request to File Supplemental Brief ("Board Defs.' Notice") ¶ 7, ECF No. 32.

**2. The Bundy Litigation**

On January 3, 2024, while the Bundy Matter was still pending and before the Board issued its final report, the plaintiff filed a lawsuit, which he refers to as "the Bundy Litigation," in the Superior Court of the District of Columbia against the Board. See Compl. ¶ 54; Klayman, 2024-CAB-000048. The plaintiff alleged that the AHHC violated Board Rule 12.2, which provides that the AHHC shall file its report with the Board no later than 120 days following the conclusion of the hearing, and "sought injunctive relief in the form of an order directing the Board to enforce Rule 12.2[.]" Compl. ¶ 54; see also Superior Court Compl. ¶ 40. The plaintiff requested "preliminary and permanent injunctive relief in the [form of] AHHC's September 20, 2023 Report being dismissed," "a temporary injunction preventing the Board from proceeding with the Bundy Matter" while the Bundy Litigation was pending, and an order from the Superior Court "dismiss[ing] the Bundy Matter in its entirety pursuant to Board Rule 12.2." Superior Court Compl. ¶ 42. In the Bundy Litigation, the plaintiff alleged that the Board treated him unfairly because of his political views. See generally Superior Court Compl.

On April 9, 2024, the Superior Court dismissed the Bundy Litigation, holding that the D.C. Court of Appeals "has repeatedly held that it has exclusive authority over all matters concerning the admission to, censure, and suspension and expulsion from the practice of law in the District of Columbia." Superior Court Order at 2. The plaintiff appealed the dismissal to the D.C. Court of Appeals, which affirmed the D.C. Superior Court's dismissal on April 17, 2025. Klayman v. Bd. Pro. Resp., 333 A.3d 1157, 1162 (D.C. 2025).

**B. Procedural Background**

The plaintiff filed his Complaint in this civil action on October 22, 2024, alleging that the defendants engaged in viewpoint discrimination by applying Rule 12.2 differently to him than they do to other attorneys with different political views. See Compl. ¶ 19, 73. On March 14, 2025, the Board Defendants, the AHHC Defendants, and the Board filed their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that this Court lacks subject-matter jurisdiction and that the plaintiff failed to state a claim upon which relief could be granted. Defs.' Mot at 2. The plaintiff filed his memorandum in opposition to the defendants' motion to dismiss on April 28, 2025. See Pl.'s Opp'n. On May 5, 2025, the Board Defendants, the AHHC Defendants, and the Board filed their reply in response to the plaintiff's opposition to their motion to dismiss. See Defs.' Reply at 1.

On May 14, 2025, the plaintiff filed a motion for a preliminary injunction, seeking relief "in the form of an order finding that [both] the AHHC Report and [the] Board Report in the Bundy Matter are void ab initio and vacated and thus preliminarily enjoined from further consideration." Pl.'s Supp. at 2. On May 22, 2025, the Board Defendants, the AHHC Defendants, and the Board filed their opposition to the plaintiff's motion for preliminary injunction in which they asserted that the plaintiff's motion for preliminary injunction "unmistakably wants this Court to stop the D.C. Court of Appeals from considering whether to impose discipline in the Bundy Matter," even though the plaintiff had yet to serve the D.C. Court of Appeals with this lawsuit. Board on Professional Responsibility, Robin Bell, Sara Blumenthal, Margaret Cassidy, Thomas Gilbertsen, William Hindle, Buffy Mims, Sharon Rice-Hicks, Bernadette Sargeant, Leslie Spiegel, Michael E. Tigar, Robert Walker, and Christian

White's Opposition to Larry Klayman's Motion for Preliminary Injunction ("Defs.' Opp'n") at 9–10, ECF No. 17.

The D.C. Court of Appeals entered its notice of appearance in a limited capacity and filed a memorandum in opposition to the plaintiff's motion for a preliminary injunction on May 23, 2025. See Notice of Appearance in a Limited Capacity ("Notice of Ltd. Appearance") at 1, ECF No. 18; Defendant the District Court of Columbia Court of Appeals's Opposition to Plaintiff's Motion for Preliminary Injunction ("Def. D.C. Ct. App.'s Opp'n"), ECF No. 19. That same day, the plaintiff filed an affidavit of service showing that he had attempted to serve the D.C. Court of Appeals on May 15, 2022. Affidavit of Service at 1, ECF No. 20.

The Court held a hearing on the plaintiff's motion for a preliminary injunction on May 27, 2025, and denied the motion "because the plaintiff ha[d] failed to establish a likelihood that the Court ha[d] subject matter jurisdiction over the claims he raise[d] in his motion." Memorandum Opinion at 1 (May 28, 2025), ECF No. 26; see generally Transcript of Preliminary Injunction Hearing, ECF No. 25.[3] The plaintiff filed a timely interlocutory appeal challenging this Court's denial with the District of Columbia Circuit, see Plaintiff's Notice of Appeal, ECF No. 23, which dismissed the appeal as moot because the D.C. Court of Appeals issued its Opinion imposing its disciplinary ruling while the plaintiff's interlocutory appeal was pending, see Order of United States Court of Appeals for the District of Columbia Circuit at 1, ECF No. 30-1.

[3] The defendants also argued that the D.C. Court of Appeals had not been properly served. See Def. D.C. Ct. App.'s Opp'n at 1 (internal citation omitted). The Court found it unclear whether the District of Columbia Superior Court Rules of Civil Procedure or the Federal Rules of Civil Procedure govern how to affect service on the D.C. Court of Appeals, but concluded that the Court did not need to reach a conclusion on "the issue of whether the Court of Appeals was properly served . . . because, even assuming arguendo that the plaintiff has properly served the Court of Appeals, . . . the plaintiff has failed to show a likelihood of jurisdiction[.]" Memorandum Opinion at 11 (May 28, 2025), ECF No. 26.

The Board and the individual Board Defendants subsequently filed a motion to reinstate their motion to dismiss, see Board Defs.' Notice at 1, which the Court had dismissed without prejudice pending a ruling on the interlocutory appeal, see Order (Mar. 3, 2026), ECF No. 29. The Court granted the Board Defendants' motion to reinstate, see Minute Order (Apr. 29, 2026), and the Board Defendants filed a supplemental brief on May 27, 2026, see Defs.' Supp. In their supplemental brief, the defendants withdrew their Younger abstention argument that they raised in their original motion and asserted a new argument that the issues and arguments advanced by the plaintiff in this case are barred by collateral estoppel because they had already been raised and resolved by the D.C. Court of Appeals in In re Klayman. Defs.' Supp. at 1–2. The plaintiff filed a response to the defendants supplemental briefing on June 10, 2026, in which he argues that his claims are not barred by collateral estoppel. See Pl.'s Supp. at 3.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction,'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. Of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).

**B. Pro Se Plaintiffs**

The Court is mindful of the fact that the plaintiff, while also a practicing attorney, is proceeding pro se.[4] The pleadings of pro se parties are "to be liberally construed, . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, a plaintiff—even one proceeding pro se—bears the burden of

[4] The Court questions whether, in light of the plaintiff's status as an attorney, it is compelled to apply the liberal pro se standard. Klayman v. Porter, No. 20-cv-3109 (RBW), 2025 WL 2938701, at *3 (D.D.C. Oct. 16, 2025). Nonetheless, out of an abundance of caution, the Court will do so. See Klayman v. Porter, No. 24-cv-2853 (RBW), 2026 WL 320191, at *5 (D.D.C. Feb. 6, 2026).

establishing that the Court has subject-matter jurisdiction over his claims. Ebrahimi v. Trump, No. 25-cv-1593 (CJN), 2026 WL 809770, at *1 (D.D.C. Mar. 24, 2026).

## III. ANALYSIS

The defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1).[5] Defs.' Mem. at 2. They argue that "[the plaintiff] effectively seeks appellate review of the state judg[]ment in a United States District Court . . . and is thus barred by the Rooker-Feldman doctrine." Id. For the reasons below, the Court agrees and concludes that this case must be dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

The Rooker-Feldman doctrine is derived from the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), and it "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judg[]ments." Reed v. Goertz, 598 U.S. 230, 235 (2023). The Supreme Court has clarified that the doctrine is "narrowly confined to 'cases brought by state-court losers complaining of injuries caused by state-court judg[]ments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" T.M. v. Univ. of Md. Med. Sys. Corp., 608 U.S. 668, 672 (2026) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

---

[5] The defendants also move for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing (1) "the Board, as an instrumentality of the D.C. Court of Appeals, is not capable of being sued[;]" (2) "all of the Board members have absolute immunity against [the] plaintiff's damages claims[;]" (3) "the D.C. Court of Appeals has repeatedly held that a delay in attorney disciplinary proceedings does not require dismissal of the disciplinary matter[;]" (4) "each of plaintiff's three claims fails as a matter of law and the Board members are entitled to qualified immunity in any event;" and (5) "the issues and arguments advanced in this case are barred by collateral estoppel because they were already made to, and resolved by, the D.C. Court of Appeals[.]" Defs.' Mem. at 2; Defs.' Supp. at 2. However, because the Court ultimately determines that it lacks subject-matter jurisdiction under Rule 12(b)(1) pursuant to the Rooker-Feldman doctrine, the Court need not conduct a Rule 12(b)(6) analysis. See Sledge v. United States, 723 F. Supp. 87, 91 (D.D.C. 2010) ("Once a court determines that it lacks subject-matter jurisdiction, it can proceed no further." (internal citation omitted)).

The defendants argue that the "plaintiff's complaint fails as a matter of law and must be dismissed" for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine because the plaintiff is improperly attempting "to appeal the state court's ruling to a federal district court." Defs.' Mem. at 11. Specifically, the defendants assert that "[on] April 9, 2024, the D.C. Superior Court dismissed [the plaintiff's] suit over Rule 12.2", but "[d]espite this, [the] plaintiff has now filed this suit, seeking the same relief: dismissal of the Bundy disciplinary matter because the Board Hearing Committee issued [its report] beyond the timeframe contemplated by Rule 12.2" Id. at 9–10. The plaintiff responds by arguing that he is raising "an 'independent claim' that falls outside of" the state court action. Pl.'s Opp'n at 15–16. According to the plaintiff, his action in the D.C. Superior Court "solely sought injunctive relief and declaratory relief that the Board must enforce Rule 12.2", while "[t]his instant matter brings claims under 42 U.S.C. § 1983 for violations of [the plaintiff]'s First and Fifth Amendment rights, and seeks damages from the [d]efendants in that regard in addition to seeking injunctive and equitable relief." Id.

In order for the Rooker-Feldman doctrine to bar a federal district court from exercising jurisdiction over a claim, three requirements must be met: (1) "the party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment[;]" (2) "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment[;]" and (3) "the federal claim must not be parallel to the state court claim." Lance v. Dennis, 546 U.S. 459, 462 (2006). Here, the prior state court judgment at issue is the Superior Court's decision in Klayman v. Board on Professional Responsibility, No. 2024-CAB-000048 (D.C. Sup. Ct. 2024), which the plaintiff refers to as the "Bundy Litigation." Compl. ¶ 54. In the Bundy Litigation, the Superior Court dismissed the plaintiff's complaint for

lack of subject-matter jurisdiction because the D.C. Court of Appeals has "the inherent and exclusive authority to define and regulate the practice of law in the District of Columbia." Superior Court Order at 2 (internal quotations and citations omitted).

The first Rooker-Feldman doctrine requirement—that "the party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment"—is clearly satisfied in this case. Lance, 564 U.S. at 462. The Rooker-Feldman doctrine is being invoked by the defendants against the plaintiff, who was "a party to the prior state-court judgment[,]" id., as he was also the plaintiff in that suit, see Klayman v. Bd. on Pro. Resp., No. 2024-CAB-000048 (D.C. Sup. Ct. 2024); Compl. ¶ 54–55. Because the Rooker-Feldman doctrine is "based . . . on allowing state courts to arrive at decisions free from collateral federal attack[,]" Richardson v. D.C. Ct. of Appeals, 83 F.3d 1513, 1515 (D.C. Cir. 1996), the fact that the Superior Court's decision was based on its lack of jurisdiction, rather than on the merits, does not alter this Court's conclusion that the Superior Court's judgment satisfies the first Rooker-Feldman requirement, and the plaintiff does not argue otherwise.

The second requirement—that "the claim raised in the federal court must have been actually raised or inextricably intertwined with the state-court judgment"—is also satisfied in this case. Lance, 564 U.S. at 462. "An issue is 'inextricably intertwined' with a state court judgment if 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" Freeman v. D.C., No. 21-cv-1775 (RBW), 2022 WL 17338096, at *5 (D.D.C. Nov. 30, 2022). In other words, "a plaintiff's federal-court claims are 'inextricably intertwined' with a prior state-court judgment unless their 'core' is 'independent' of that judgment." Bradley v. Dewine, 55 F. Supp. 3d 31, 41 (D.D.C. 2014). In making this assessment, a district court "must closely examine a plaintiff's suit to determine whether claims,

however styled, effectively seek review of an adverse decision." Araya v. Bayly, 875 F. Supp. 2d 1, 4 (D.D.C. 2012), aff'd, No. 12-7069, 2013 WL 500819 (D.C. Cir. Jan. 18, 2013).

Here, the plaintiff requested the same relief for the same reason in both this matter and in the prior proceeding in the Superior Court. In both cases, the plaintiff requested that "the Bundy Matter be dismissed[,]" Compl. at 26, see also Superior Court Compl. ¶ 42, because the Report and Recommendation was issued beyond the time designated in Rule 12.2, see Compl. ¶ 54. Although the plaintiff claims that the Court has jurisdiction over this matter because he has raised "an independent claim" under 42 U.S.C. § 1983 for alleged violations of his First and Fifth Amendment rights, Pl.'s Opp'n at 15–16, "there is no substance to [the plaintiff's] claim other than his challenge to the [Board and . . .D.C. Court of Appeal's] application of the disciplinary rules in his case." Stanton v. D.C. Court of Appeals, 127 F.3d 72, 76 (D.C. Cir. 1997).

Despite what the plaintiff contends he is presenting to the Court in this case, he is not actually challenging the constitutionality of Rule 12.2. See generally Compl.; see also Feldman, 460 U.S. 462, 486–87 (1983) (holding that a lower federal court could hear a challenge to the constitutionality of a D.C. bar admission rule, but not a claim that the D.C. Court of Appeals had abused its discretion in applying the rule). Rather, he challenges the application of Rule 12.2 in arguing that the disciplinary proceedings against him were based on "personal and political biases" and that the defendants "with discriminatory intent, [have] selectively and disparately targeted conservative and Republican attorneys, such as [the plaintiff], for removal from the practice of law." Compl. ¶ 61. Despite the phrasing of the plaintiff's claim, these conclusory allegations are nearly identical to those he made to the D.C. Superior Court, where, in a count titled "Violation of Constitutional Equal Protection Rights[,]" he alleged that "[t]he Board has

discriminated against [him] as a conservative, Caucasian and male public interest attorney of Jewish origin and advocate by willfully ignoring its Rules, Board Rule 12.2, in refusing [to] dismiss the AHHC Report as null and void and of no force and effect." Superior Court Compl. ¶ 45; see also id. ¶ 12 (alleging that the ODC initiated proceedings against the plaintiff to "target and eliminate conservative and Republican activist attorneys"). In both this case and the Superior Court case, the plaintiff alleged that he was treated differently because of his political beliefs, among other reasons, and, in both cases, his allegations require the court to determine whether the Board violated Rule 12.2 for allegedly the same discriminatory reasons. Compare Compl. at 26 (asking the Court to dismiss "the Bundy Matter . . . pursuant to Rule 12.2 and the First and Fifth Amendments of the U.S. Constitution") and id. ¶¶ 76–77 (alleging that the defendants were "selective and discriminatory" in carrying out the plaintiff's disciplinary proceedings given his "conservative and Republican activist views"), with Superior Court Compl. ¶ 45 (asserting violations of constitutional rights because "[t]he Board [allegedly] discriminated against [the plaintiff] as a conservative, Caucasian, and male public interest attorney of Jewish origin . . . by willfully ignoring . . . Board Rule 12.2."). Therefore, his challenge is not an attack on the constitutionality of Rule 12.2, but rather on the manner in which it was applied to him.

The D.C. Superior Court determined that the "District of Columbia Court of Appeals has exclusive authority over the attorney disciplinary process in the District of Columbia[.]" Superior Court Order at 1. In order for this Court to assess the Board's interpretation of Rule 12.2, the Court would need to conclude that the Superior Court was incorrect and find that a court other than the District of Columbia Court of Appeals has the authority to review how the Board conducted the plaintiff's disciplinary proceedings and the manner in which the Board

applied Rule 12.2. In other words, this Court is "in essence being called upon to review the state court decision[,]" which the Court "may not do." Feldman, 460 U.S., at 482 n.16. The plaintiff's claims under 42 U.S.C. § 1983 are therefore inextricably intertwined with the Superior Court's judgment in Klayman v. Board on Professional Responsibility. See Stanton, 127 F.3d, at 76.

Finally, the third requirement—that "the federal claim must not be parallel to the state-court claim," is satisfied here because the suit in this case was filed after the Superior Court entered its judgment. Lance, 564 U.S., at 462. "A federal-court claim is parallel to a state-court claim if it is filed after the state-court claim, but before the state court enters judgment." Bradley, 55 F. Supp. 3d, at 42 (citing Exxon Mobil, 544 U.S. at 289–91). However, this does not mean that the plaintiff would be able to circumvent the Rooker-Feldman doctrine merely because "the plaintiff filed h[is] federal suit while the state appellate proceedings were pending, rather than waiting for the state high court to act." T.M., 608 U.S. at 668, 685. "Such a rule would only encourage parties to file earlier in federal court, duplicating their efforts even though the state process may well resolve the dispute in their favor." Id. Thus, because the plaintiff filed this suit after the Superior Court entered its order dismissing Klayman v. Board on Professional Responsibility, this federal claim is not parallel to the plaintiff's state claim.

Accordingly, the Court concludes that all three of the Rooker-Feldman doctrine requirements are satisfied in this case, and the Court therefore lacks subject-matter jurisdiction over the plaintiff's claims. Freeman, 2022 WL 17338096, at *6 (granting Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction where all three Rooker-Feldman elements were met). "Because the Court lacks jurisdiction to address the merits of [the plaintiff's] claims, it

does not reach [the d]efendants' alternative arguments in favor of dismissal." Hunter v. Nat'l Bank Ass'n, 698 F. Supp. 2d 94, 101 (D.D.C. 2010).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss the plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

**SO ORDERED** this 12th day of November, 2026.[6]

REGGIE B. WALTON
United States District Judge

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.